# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### At Charleston

MICHAEL RHODES,

and

ROBERT RHODES,
     Plaintiffs.

     v.                                Civil Action No. 2:18-cv-01179
_____

WEST VIRGINIA DIVISION OF PROTECTIVE SERVICES,

GREGORY SCOTT FERNATT,
     Individually and in his Capacity as a Capitol Security Officer,

ROBERT K. HERALD,
     Individually and in his Capacity as a Capitol Security Officer,

SCOTT DUFF,
     Individually and in his Capacity as a Capitol Security Officer,

JOHN WORKMAN,
     Individually and in his Capacity as a Capitol Security Officer,

TRAVAS BENNETT,
     Individually and in his Capacity as a Capitol Security Officer,
and

JACK CHAMBERS,
     Individually and in his Capacity as Deputy Director of the West Virginia
     Division of Protective Services,
     Defendants.

## COMPLAINT

For their Complaint, the Plaintiffs, by undersigned Counsel, assert the following.

Introduction

1. The within action asserts claims of direct and proximately caused damages resulting from the unlawful conduct of the Defendants. The home of the Plaintiffs was entered by certain of the Defendants, while acting under the color of law, but without legal authority. Plaintiff Michael Rhodes was taken from that home by certain of the Defendants, without a warrant or legal justification, in what amounted to an armed abduction, following which he was taken not to a court, but to the West Virginia State Capitol, where he was unjustifiably held for a period of time. During that time, the Defendants concocted a baseless *Criminal Complaint* which was presented, along with Michael Rhodes to the Kanawha County Magistrate Court. Subsequent representations by Defendants to the magistrate court resulted in Michael Rhodes being confined for nearly a month in a regional jail and six months in community confinement. After trial of the cases,  Michael Rhodes was ultimately acquitted of all charges in the Circuit Court of Kanawha County.

Jurisdiction

2. The Plaintiffs bring this action under the authority of 28 U.S. Code §1331, with remedies as provided by 42 U.S. Code §1983. Certain of the Plaintiffs' claims are cognizable under West Virginia law. As to those claims, supplemental jurisdiction of this Court is proper as provided by 28 U.S. Code §1367 in that  those claims relate to the same case and controversy. Venue is proper in this case, as provided by  28 U.S.C. § 1391(b)(2), because the conduct complained of herein occurred principally within the Southern District of West Virginia.

Parties to the Action

3. Plaintiff Michael Rhodes is, and at all times relating to this action was, an adult resident and citizen of Charleston, Kanawha County, West Virginia.

4. Plaintiff Robert Rhodes is, and at all times relating to this action was, an adult resident and citizen of Charleston, Kanawha County, West Virginia.

5. West Virginia Division of Protective Services is an agency organized under the authority of West Virginia Code §15-2D-2, as stated therein, "...to provide safety and security at the capitol complex and other state facilities."

6. Defendant Gregory Scott Fernatt was at all times relating to this action an adult citizen residing within the Southern District of West Virginia.

7. Defendant Robert K. Herald is, and at all times relating to this action was, an adult citizen residing within the Southern District of West Virginia.

8. Defendant Scott Duff is, and at all times relating to this action was, an adult citizen residing within the Southern District of West Virginia.

9. Defendant John Workman is, and at all times relating to this action was, an adult citizen residing within the Southern District of West Virginia.

10. Defendant Travas Bennett is, and at all times relating to this action was, an adult citizen residing within the Southern District of West Virginia.

11. Defendant Jack Chambers is, and at all times relating to this action was, an adult citizen residing within the Southern District of West Virginia.

Facts Common to All Causes of Action

12. On August 12, 2016 Plaintiff Michael Rhodes was returning to his home located on

3

Piccadilly Street in Charleston after mowing the grass at a local church. He noticed Defendant Fernatt standing in his (Fernatt's) driveway on Westmoreland Drive, pulled into the driveway and asked Fernatt if he knew why other police officers seemed to be following him. Michael Rhodes had spoken with Fernatt in the past, thought he was a Charleston police officer, and perceived him to be friendly and approachable. Although Fernatt was in his Capitol Security Uniform, he was off-duty and several miles from the State Capitol premises. Fernatt was generally unresponsive to Michael Rhodes's inquiry, other than to repeat back his questions. Michael Rhodes left the driveway and continued home.

13. Defendant Fernatt, rather than contacting the Charleston Police, called his supervisor, Defendant Chambers, according to Fernatt,"because it need[ed] to be handled by an experienced crew."  Chambers, rather than calling an appropriate agency to investigate, immediately sent a contingent of capitol security officers, included among the Defendants to "look into" Fernatt's complaint.

14. The arriving Defendants received a handwritten statement from Fernatt, which indicated Michael Rhodes had slid and spun his tires multiple times in Fernatt's driveway and on the street, frightened Fernatt, refused Fernatt's order to step out of his truck, thereby disobeying a police officer, and left the driveway in spite of that directive.

15. The arriving Defendant officers also took photographs, which clearly showed no spinning or skidding tire marks. However, the same Defendants jointly later claimed that tire marks constituted the offense of *Destruction of Property*.

16. Those Defendants also later claimed that Michael Rhodes's conduct also constituted assault of a police officer in the performance of his duties, refusal to obey a police officer in

4

performance of his duties, and fleeing from a police officer. Fernatt clearly was not on duty, nor performing any police function. Fernatt also conceded, under oath, that he had "not a clue" what Michael Rhodes intentions may have been, nor as of the time of Michael Rhodes trial, the existence of any investigation into that issue being undertaken.

17. Defendant Fernatt has used his authority in the past for his individual purposes. As example, he and another capitol security officer once patrolled Fernatt's neighborhood in an official state capitol security vehicle and questioned neighbors they encountered about errant golf balls Fernatt found on his lawn.

18. Later the same day (August 12, 2016), a contingent of capitol security officers appeared at the home of the Plaintiffs, where they confronted Plaintiff Robert Rhodes, who is Michael Rhodes father, as the elder Mr. Rhodes returned home.  Among those present there were Defendants Duff, Herald, Workman and Bennett. Robert Rhodes was asked if the pickup truck there belonged to Michael Rhodes, if Michael lived there, and if he was home. Robert Rhodes said that he would check to see if Michael was there and ask him to come outside to speak with the officers. When Robert unlocked the door, certain of the officers rushed in behind him, went through the house and let other offers in by unlocking another entry door from the inside. The officers did not have, nor did they ever obtain a warrant of any kind.

19. Once inside, the officers seized and handcuffed Michael Rhodes. Desperately seeking an explanation, Robert Rhodes was only told Michael was being taken to the State Capitol, because they were capitol police officers and that Michael was to be charged with assaulting a capitol police officer. While being driven to the state capitol, Michael was told he was fortunate that his father had been present and otherwise he would have taken a beating.

20. Michael Rhodes was forcibly kept at the state capitol for a protracted time, later explained by certain of the Defendants as necessary for "processing" and delayed by malfunctioning photography or fingerprinting equipment. During his time at the Capitol, Michael, in spite of receiving no Miranda warnings, offered to provide a statement, which the Defendants declined to hear. He was eventually taken to the Kanawha County Magistrate Court in Charleston, where what was purported to be criminal complaint was submitted by Defendants.

21. A subsequent Magistrate Court hearing on that complaint resulted in Plaintiff Michael Rhodes being sentenced to three years, six months incarceration, concurrently, or a total of one year. Michael Rhodes spent nearly a month of that sentence in the South Central Regional Jail before being granted an appeal bond which included a condition of community confinement remote from his own neighborhood, which lasted six moths before that condition was removed.

22. During a trial in Kanawha Circuit Court it was disclosed that substantial parts of the referenced *criminal complaint* were purely fabrication, and Michael Rhodes was acquitted of all charges.

<u>42 U.S. Code §1983</u>

23. The foregoing paragraphs are adopted as though fully restated here.

24. The Defendants each acted as to all claims asserted herein under the color of law. The entry into the Plaintiffs' home was made without a warrant of any kind and not within a lawful exception to the warrant requirement. Defendant Michael Rhodes was forcibly abducted without legal authority in any form, including, but not limited to, a complete absence of probable cause, jurisdiction or authority of those who seized him, all done willfully, intentionally and with deliberate indifference to the Plaintiffs' rights as guaranteed by the Fourth Amendment to the

6

United States Constitution.

25. The individual and combined actions of the Defendants directly and proximately caused Defendant Michael Rhodes to further be deprived of his due process rights as guaranteed, *inter alia*, by the Fourteenth Amendment to the United States Constitution by subjecting him to jail and community confinement and other restraints on his liberty prior to his acquittal.

<u>False Arrest and False Imprisonment</u>

26. The foregoing paragraphs are adopted as though fully restated here.

27. The Defendants' conduct in seizing or causing Michael Rhodes to be seized without probable cause constitutes false arrest in violation of the Fourth Amendment to the United States Constitution and is also cognizable under West Virginia law. The seizure and detention of him further constitutes false imprisonment in violation of the Fourteenth Amendment to the United States Constitution and other due process rights, and was done intentionally, recklessly, wilfully, negligently and with deliberate indifference to his constitutional rights and in violation of West Virginia law.

<u>Malicious Prosecution</u>

28. The foregoing paragraphs are adopted as though fully restated here.

29. The Defendants, acting in concert with one another, caused the commencement of criminal proceedings against Plaintiff Michael Rhodes, without probable cause. The Defendants, acting maliciously and with deliberate indifference to his rights caused allegations to be used in furtherance of his prosecution knowing the same to false and fictitious.

<u>Intentional Infliction of Emotional Distress</u>

30. The foregoing paragraphs are adopted as though fully restated here.

7

31. The Defendants' conduct, from its inception, was outrageous, intentional, reckless and accomplished through Defendants' position and authority and beyond civilized decency, proximately causing Michael Rhodes' severe emotional distress and physical manifestation of the same.

Failure to Supervise/Agency Liability

32. The foregoing paragraphs are adopted as though fully restated here.

33. Defendant West Virginia Division of Protective Services negligently failed to adequately supervise the conduct of the capitol police officers named in this action. The actions of the individual officers and supervisors were known to that Division, or through reasonable diligence should have been known. The failure of that Division to properly supervise its officers proximately resulted in damages complained of herein.

Failure to Intervene

34. The foregoing paragraphs are adopted as though fully restated here.

35. Defendants' were mutually aware of the conduct of one another, including that described above. Each was aware of the violations and recklessly and negligently failed to intervene in the conduct complained of herein, specifically, but not limited to, the warrantless entry of the Rhodes home, the warrantless seizure of Michael Rhodes, the bringing of the criminal case without probable cause and the absence of evidence in support of it, and the continued advancement of evidence designed to falsely convict and incarcerate him.

Damages

36. The foregoing paragraphs are adopted as though fully restated here.

37. As a direct and proximate cause of that which is complained of herein, Plaintiff

Michael Rhodes has suffered severe emotional distress, some of which is continuing or lasting in nature, embarrassment, humiliation, loss of enjoyment of day to day life, inconvenience, financial expense of home incarceration, legal fees and costs and psychological counseling and lost income.

38. As a direct and proximate cause of that which is complained of herein, Plaintiff Robert Rhodes has suffered the emotional distress in connection with the unlawful armed invasion of his home, witnessing the unlawful seizure of his son and its subsequent effects, the kindly services of Michael while unlawfully incarcerated, and annoyance and inconvenience.

39. Because the conduct of the Defendants was grossly negligent, intentional, willful, malicious and in done with deliberate indifference to the rights of the Plaintiffs, the Defendants are liable to the Plaintiffs for Punitive or Exemplary damages.

<u>Prayer</u>

WHEREFORE, Plaintiffs respectfully pray that this Court grant judgment to the Plaintiffs against the Defendants, jointly and severally as to each of their causes of action and award general, special and punitive damages, attorney fees and cost, court costs and fees, along with such further and other relief this Court deems proper under law.

Plaintiffs demand a trial by jury.

Respectfully Submitted,


<u>s/Mark McMillian</u>
<u>Mark McMillian (WV Bar 9912)</u>
*Counsel for the Plaintiffs*
Mark McMillian - Attorney at Law, L.C.
Boulevard Tower - Suite 900
1018 Kanawha Blvd., East
Charleston, WV 25301
Tel: 304.720.9099  Fax: 304.720.0290
email: mark@markmcmillian.com