**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**At Charleston**


MICHAEL RHODES,

and

ROBERT RHODES,
      Plaintiffs.

          v.                                Civil Action No.2:18-cv-01179
                                                  Honorable John Copenhaver, Jr.


WEST VIRGINIA DIVISION OF PROTECTIVE SERVICES,

GREGORY SCOTT FERNATT,
      Individually and in his Capacity as a Capitol Security Officer,

ROBERT K. HERALD,
      Individually and in his Capacity as a Capitol Security Officer,

SCOTT DUFF,
      Individually and in his Capacity as a Capitol Security Officer,

JOHN WORKMAN,
      Individually and in his Capacity as a Capitol Security Officer,

TRAVAS BENNETT,
      Individually and in his Capacity as a Capitol Security Officer,
and

JACK CHAMBERS,
      Individually and in his Capacity as Deputy Director of the West Virginia
      Division of Protective Services,
      Defendants.


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants move to dismiss under FRCP 12(b)(6) arguing that Plaintiffs' Complaint fails

to comport to pleading requirements established by Rule 8,  Defendants are entitled to qualified immunity as to all of plaintiffs' claims, that Plaintiffs cannot maintain a claim against Defendants Gregory Scott Fernatt, Robert K. Herald, Scott Duff, John Workman, Travas Bennett, and Jack Chambers in their official capacity pursuant to 42 U.S.C. §1983, the West Virginia Division of Protective Services and Defendant officers are entitled to qualified immunity from Plaintiffs' common law claims under State law, Plaintiffs' claims for false arrest and false imprisonment are barred by a one year statute of limitations, Plaintiffs cannot establish failure to supervise or agency liability of the West Virginia Division of Protective Services with regard to the Defendant officers, Plaintiffs cannot establish their claims for intentional infliction of emotional distress, Plaintiffs cannot establish their claim for malicious prosecution, and  Plaintiffs are barred by state law from recovering punitive damages from the Defendants.

RELEVANT FACTS AND PROCEDURAL HISTORY

On August 12, 2016 Plaintiff Michael Rhodes was returning home after cutting the grass at his church. As he was passing the home of Defendant Fernatt, he saw Fernatt standing outside in uniform. Michael had recently seen Charleston police officers who seemed to be following him[1]. Michael Rhodes had spoken with Fernatt in the past, thought he was a Charleston police officer, and perceived him to be friendly and approachable. Michael pulled into Fernatt's driveway and asked him if he knew why other officers had been following him. Fernatt was generally unresponsive to Michael Rhodes's inquiry, other than to repeat back his questions. Michael Rhodes left the driveway and continued home. Although both Fernatt and the Rhodes

---

[1]Michael Rhodes has suffered from paranoia and schizophrenia. He acknowledges that the then recent instances of nearby presence of police officers was likely coincidental and not purposeful.

residences are in the city of Charleston, Fernatt called Defendant Chambers, his supervisor at the West Virginia Division of Protective Services (sometimes herein "WVDPS") to report the Michael Rhodes encounter. As discussed below, important features of that which Fernatt reported were patently fictitious, in some instances as demonstrated by Fernatt's own testimony. Defendant Chambers sent other WVDPS employees to Fernatt's home where photographs were taken and Fernatt wrote out a statement. Following that limited investigation, those security officers went to the Rhodes home with intentions of arresting Michael. After knocking and remaining there for a time without an answer at the door, Robert Rhodes arrived by automobile and was questioned about the ownership of Michael's truck and learned he was Robert's son and that he in fact lived there. The officers said they needed to speak with Michael, to which Robert replied that he was probably home and would see if he would come outside. When Robert unlocked and opened the back door, officers rushed in behind him and went through the house to the front door, unlocked it and let others in through that door. The officers demanded to know if there were weapons in the house and seized and handcuffed Michael. Robert Rhodes was only told in response to his questions that Michael was being arrested for assaulting a police officer and was being taken to the State Capitol, because they were capitol police officers. Michael was driven to the capitol complex. During the drive there he was told that he was lucky his father had been present and otherwise he would have taken a beating. He was held at the capitol for an extended time, ostensibly because of malfunctioning fingerprinting or photography equipment. It was apparently during this time a criminal complaint was prepared. Michael was ultimately presented to a Kanawha County magistrate. The criminal complaint lists a "warrantless arrest" and does not name a victim for the various misdemeanors alleged, which leaves open

presumption that one of the several officers had arrested him for an offense committed in his presence, which had not occurred.  Michael Rhodes was committed to jail pending bail, which was posted later that day. He was put on trial for  before a magistrate for the misdemeanor offenses of fleeing from  officer, assault on police officer, obstructing an officer, and destruction of property. The witnesses appearing included Defendants Fernatt and Herald. Based on their testimony,  Michael was convicted of each of those charges. Sentencing was later imposed as three one year terms and one six month term to be served concurrently. Michael served nearly one month of that sentence in a regional jail until the assistant public defender representing him at that time filed an appeal. However, he was held on house arrest for six moths as a condition of that bond at a home of a friend because Fernatt represented to the magistrate that Michael's presence at his own home, in Fernatt's neighborhood, posed a danger to Fernatt.

A de novo trial was ultimately conducted before Circuit Judge Charles King, Jr., who rendered a verdict of not guilty.

SUFFICIENCY OF THE COMPLAINT

Defendants acknowledge that Rule 8 of the Federal Rules of Civil Procedure requires that a pleading stating a claim for requires "a short and plain statement of the claim showing that the pleader is entitled to relief", but mis-characterizes the contents of the complaint in this action as consisting of nothing more than "labels and conclusions" and "legal conclusions". To the contrary, the Complaint sets out in more than sufficient factual detail in paragraphs 12 through 22 the actions of the Defendants that form the bases for the causes of action asserted, which were adopted as restated as to the specific causes of action.

A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a

4

complaint, *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), considered with the assumption that the facts alleged are true, *Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000). And the legal sufficiency of a complaint is measured by whether it meets the standards for a pleading stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir., 2009).

Defendants make particular reference to Paragraph 24 of the Complaint, asserting in essence that it consists of nothing more than legal conclusions. That paragraph reads as follows:

> 24. The Defendants each acted as to all claims asserted herein under the color of law. The entry into the Plaintiffs' home was made without a warrant of any kind and not within a lawful exception to the warrant requirement. Defendant Michael Rhodes was forcibly abducted without legal authority in any form, including, but not limited to, a complete absence of probable cause, jurisdiction or authority of those who seized him, all done willfully, intentionally and with deliberate indifference to the Plaintiffs' rights as guaranteed by the Fourth Amendment to the United States Constitution.

The complaint clearly contains facts supporting the contentions that the defendants were acting under color of law. Plaintiffs first identify the defendants as sued "Individually and in his Capacity as a Capitol Security Officer." In Par. 19 Plaintiffs allege "Once inside, the officers seized and handcuffed Michael Rhodes. Desperately seeking an explanation, Robert Rhodes was only told Michael was being taken to the State Capitol, because they were capitol police officers and that Michael was to be charged with assaulting a capitol police officer."

Defendants also posit in their present Memorandum "It cannot be disputed that Defendant Officers were carrying out their official duties as authorized law enforcement officers when Plaintiff Michael Rhodes was arrested." *Defendants' Memorandum of Law in Support of Motion to Dismiss*, P. 15.

The Complaint alleges the absence of a warrant of any kind – an assertion of fact, one which is not disputed. It is further alleges that the seizure of Michael Rhodes was "not within a lawful exception to the warrant requirement." This is a factual allegation of violation of basic and well-known principals of law. The preceding paragraphs of the complaint describe that Michael was subjected to allegations of misdemeanor offenses followed by an arrest by those not present during any alleged offense. There is an absolute warrant requirement, except in very narrow exceptional circumstances, which the Complaint states did not apply.

The paragraph complained of also alleges "Defendant Michael Rhodes was forcibly abducted without legal authority in any form, including, but not limited to, a complete absence of probable cause, jurisdiction or authority of those who seized him..." As noted *ante*, the preceding paragraph alleges "Once inside, the officers seized and handcuffed Michael Rhodes...." a factual allegation; followed by the assertion of "a complete absence of probable cause, jurisdiction or authority of those who seized him...." To the issue of absence of probable cause, it is factually alleged in paragraph 19 that "Those Defendants also later claimed that Michael Rhodes's conduct also constituted assault of a police officer in the performance of his duties, refusal to obey a police officer in performance of his duties, and fleeing from a police officer. Fernatt clearly was not on duty, nor performing any police function. Fernatt also conceded, under oath, that he had 'not a clue' what Michael Rhodes intentions may have been[.]" Paragraph 15 of the complaint also states, in part " The arriving Defendant officers also took photographs, which clearly showed no spinning or skidding tire marks. However, the same Defendants jointly later claimed that tire marks constituted the offense of Destruction of Property." The issue of jurisdiction first concerns jurisdiction of an officer generally to conduct a warrantless arrest for misdemeanor offenses,

supra. Likewise, Plaintiffs allege that as Capitol security officers, they lacked jurisdiction to act

on matters unrelated to their duties in securing Capitol complex premises[2]. The remainder of

paragraph 24 alleges the actions of Defendants were "done willfully, intentionally and with

deliberate indifference to the Plaintiffs' rights as guaranteed by the Fourth Amendment to the

United States Constitution." The facts as articulated in the preceding paragraphs of the complaint

could hardly be seen as anything but wilful, intentional and deliberately indifferent to the Rights

of the Plaintiffs. The complaint alleges at Paragraphs 15 and 16 intentional misrepresentations of

facts in the bringing and pursuing the criminal cases against Michael. The complaint factually

alleges warrantless seizure of premises and of the person, affirmatively activities and not the sort

of thing that occurs negligently.

     Defendants further argue that Paragraph 29 of the Complaint is "replete with legal

---

[2]See, W. Va. Code §15-2D-1 (prior to recent revisons), *et seq*., which includes in its
legislative purpose: "...for the purpose of providing safety and security to individuals who visit,
conduct business or work at the capitol complex and other state facilities." W. Va. Code §15-2D-
2 (a) restates: "The purpose of the division is to provide safety and security at the capitol
complex and other state facilities." While §15-2D-3 prescribes law enforcement powers and
authority to carry firearms beyond state property, those are accompanied by the following:

> *Provided*, That the director and designated members shall have such powers
> throughout the State of West Virginia in investigating and performing law-
> enforcement duties for offenses committed on the Capitol Complex or related to
> the division's security and protection duties at the Capitol Complex: *Provided,*
> *however,* That the director and designated members shall have said powers
> throughout the state relating to offenses and activities occurring on any property
> owned, leased or operated by the State of West Virginia when undertaken at the
> request of the agency occupying the property: *Provided further,* That nothing in
> this article shall be construed as to obligate the director or the division to provide
> or be responsible for providing security at state facilities outside the Capitol
> Complex.

Nothing in the present action conceivably, remotely relates to any function contemplated by the
prescribed duty of a "Capitol Police officer."

conclusions without specifying specific conduct of any specific individual Defendants." As above, Defendants ignore the factual recitations in the preceding paragraphs and ask the Court to consider that paragraph in isolation. The preceding paragraph, Numbered 28 states "The foregoing paragraphs are adopted as though fully restated here." Paragraph 29 alleges: "The Defendants, acting in concert with one another, caused the commencement of criminal proceedings against Plaintiff Michael Rhodes, without probable cause. The Defendants, acting maliciously and with deliberate indifference to his rights caused allegations to be used in furtherance of his prosecution knowing the same to false and fictitious." Read together with the preceding paragraphs adopted, the complaint is clearly factually sufficient. "Those Defendants also later claimed that Michael Rhodes's conduct also constituted assault of a police officer in the performance of his duties, refusal to obey a police officer in performance of his duties, and fleeing from a police officer. Fernatt clearly was not on duty, nor performing any police function. Fernatt also conceded, under oath, that he had 'not a clue' what Michael Rhodes intentions may have been, nor as of the time of Michael Rhodes trial, the existence of any investigation into that issue being undertaken[3]." "He was eventually taken to the Kanawha County Magistrate Court in Charleston, where what was purported to be criminal complaint was submitted by Defendants[4]." "During a trial in Kanawha Circuit Court it was disclosed that substantial parts of the referenced criminal complaint were purely fabrication, and Michael Rhodes was acquitted of all charges[5]." Read together, those parts of the Complaint clearly make out a cause of malicious prosecution.

---

[3]Complaint, Par. 16

[4]Complaint, Par. 20, in part

[5]Complaint, Par. 22

8

Defendants further complain that "no specific defendant is ever identified as as being responsible for these allegations; rather Complaint treats all Defendant Officers as the same for the purposes of finding liability" (Def's Mem. P.8). To the contrary, the complaint at P.18 identifies "Defendants Duff, Herald, Workman and Bennett" as those entering the Rhodes home and associated with that which occurred and originated there.  Defendant Fernatt is clearly identified as having supplied false information that was the catalyst for that which followed Michael's stop at his driveway. (Complaint, Par.13). Also contained in that paragraph is the allegation that Defendant Chambers sent out to the look into Fernatt's reported issue. The short and plain statement requirements of Rule 8, FRCP do not require more than was supplied in this case. As it concerns the allegation that the individual defendants acted in concert with one another, that is also expressed adequately – the named officers are each members of the same security force. They presented themselves together at the Rhodes home, entered it together and seized Michael Rhodes, all of which is expressed in the Complaint.

For reasons above and as may be advanced in argument, the Defendants' assertion that the Complaint in this action fails to state a claim upon relief can be obtained under Rule 12(b)(6) should be denied.

QUALIFIED IMMUNITY

<u>Individual Defendants</u>

Defendants correctly assert that the test "to determine whether a police officer is entitled to qualified immunity is two-fold: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right, and (2) was that right clearly established such that a reasonable person would have known.  See,  Siegert v.

9

Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789 (1991).  Under the facts of this case, there is first no

dispute that the Defendants had no warrant of any kind.

"To be arrested in the home involves not only the invasion attendant to all arrests but also

an invasion of the sanctity of the home.  This is simply too substantial an invasion to allow

without a warrant, at least in the absence of exigent circumstances, even when it is accomplished

under statutory authority and when probable cause is clearly present." "We find this reasoning to

be persuasive and in accord with this Court's Fourth Amendment decisions."  Payton v. New

York Riddick v. New York, 445 U.S. 573, 588-89 (1979) citing United States v. Reed, 572 F.2d

412, 423 (1978), cert. denied, sub nom. Goldsmith v. United States, 439 U.S. 913,  99 S.Ct. 283,

58 L.Ed.2d 259.

The foregoing also concerns a right that was "clearly established such that a reasonable

person would have known." In Quigley v. City of Huntington, S.D.W.Va. Civ. Act. No.

3:17-cv-01906 (Mem. Op., 2017) (Chambers, J.)  the Court discussed a warrantless arrest for a

misdemeanor, not committed in the officer's presence.

> When considered in the context of the misdemeanor charge, the violative nature
> of these allegations is exacerbated. Under West Virginia law, probable cause to
> make a warrantless arrest for a misdemeanor only exists "when the facts and
> circumstances within the knowledge of the arresting officer are sufficient to
> warrant a prudent man in believing that a misdemeanor is being committed in his
> presence." Syl. pt 1, State v. Forsythe, 460 S.E.2d 742, 743 (W. Va. 1995)
> (emphasis added); see also W. Va. Code § 62-10-6.

Further, as noted in Pars. 14-15 of the Complaint, Plaintiffs allege that the individual

Defendants that came to Fernatt's home, and later to Rhodes', were informed by Fernatt that

Michael had spun and slid his tires, which resulted in Michael being charged with misdemeanor

destruction of property. However, as further alleged in the Complaint, those same officers not

only observed, but photographed paved surfaces, which disclosed no such tire skidding or

spinning markings. "The reasonable officer would clearly know that she or he cannot make

materially false statements to a county magistrate for a probable cause determination, and cannot

simply ignore exculpatory evidence that is looking him or her squarely in the face. Thus,

Plaintiff's allegations, at this stage, present sufficient grounds on which to deny qualified

immunity." *Quigley*, supra at P. 11. See also, Humbert v.  Mayor & City Council of Balt. City,

866 F.3d 546, 562 (4th Cir., 2017), citing Smith v. Reddy , 101 F.3d 351, 355 (4th Cir. 1996):

> The Officers argue that a reasonable person in the Officers' positions would not
> have known that his or her actions violated a clearly established right. Certainly,
> the Fourth Amendment right to be seized only on probable cause was clearly
> established at the time of the events at issue here. Brooks , 85 F.3d at 183. The
> law made clear that arresting and initiating legal process against a person without
> probable cause amounts to a seizure in violation of the Fourth Amendment.
> Lambert , 223 F.3d at 261–62 ; Brooks , 85 F.3d at 183. Additionally, it was
> clearly established "that the Constitution did not permit a police officer
> deliberately, or with reckless disregard for the truth, to make material
> misrepresentations or omissions to seek a warrant that would otherwise be without
> probable cause." Miller , 475 F.3d at 631–32 (collecting cases). The objective
> standard for qualified immunity accommodates the allegation of falsity or material
> omissions "because a reasonable officer cannot believe a warrant is supported by
> probable cause if the magistrate is misled by [stated or omitted facts] that the
> officer knows or should know are false [or would negate probable cause]."

Defendants additionally argue (Def. Mem. P.16) that because the officer Defendants are

sued both in their individual and official capacities, the claims are redundant and must be

dismissed; and, for that proposition cite Kentucky v. Graham, 473 U.S. 159, 165-166 (1985).

Reliance on Graham is misplaced, as it merely addresses the distinctions of those actions in terms

of sources of recovery, as opposed to prohibiting the co-existence.  "As long as the government

entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects

other than name, to be treated as a suit against the entity.  Brandon, supra, 469 U.S., at 471-472,

105 S.Ct., at 878. It is not a suit against the official personally, for the real party in interest is the

entity.  Thus, while an award of damages against an official in his personal capacity can be

executed only against the official's personal assets, a plaintiff seeking to recover on a damages

judgment in an official-capacity suit must look to the government entity itself." Graham at 166.

<u>State Agency Qualified Immunity</u>

Defendants assert that under the allegations of the Complaint, Defendant West Virginia

Division of Protective Services is entitled to qualified immunity. The defense premises that

position on the contention that there is no stand-alone tort recognized in this state for negligent

training or supervision. However more recently, in W. Va. Reg'l Jail & Corr. Facility Auth. v.

A.B., 234 W.Va. 492, 766 S.E.2d 751 (W. Va., 2014) the Court spoke to that issue:

> Having clarified that this claim likewise derives from the alleged negligence of
> some public officer(s) or employee(s) responsible for the training, supervision,
> and retention of D. H., we are again guided by the principle first enunciated in
> Clark.
>
> *****
>
> [O]nce the "judgments, decisions, and actions" of a governmental official are
> determined to be discretionary, the analysis does not end. Rather, even if the
> complained-of actions fall within the discretionary functions of an agency or an
> official's duty, they are not immune if the discretionary actions violate "clearly
> established laws of which a reasonable official would have known[.]" 231 W.Va.
> at 572, 746 S.E.2d at 563 (citing Syl. Pt. 3, Clark, 195 W. Va. 272,  465 S.E.2d
> 374).

In the case *sub judice*, it is alleged that Defendant Chambers as the Deputy Director of the

WVDPS directed the actions of the individual Defendant security officers to report to a location

clearly outside of the statutorily prescribed scope of his office to attend to a matter outside the

purposes defined by state code, discussed *ante*. The Complaint alleges that the call to him was

from Fernatt and Chambers reacted by sending his those other officers, a fact the defense does

12

not dispute.  While the defense discusses negligent hiring and retention, those are not alleged

here; but rather the improper supervision of the individual officers. The WVDPS through its

supervisors could have intervened at any point during the events complained of, but failed to do

so. This Court noted in Smith v. Hypes, Civ. Act. No. 2:14-cv-17001, S.D.W. Va. (2015)

(Copenhaver, J.):

> In Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994), the Fourth Circuit clearly
> established that a supervisor may be liable for the actions of his subordinates
> where the supervisor, by his own conduct, was deliberately indifferent to, or
> tacitly authorized or approved, prior constitutional violations. Such liability is not
> based on respondeat superior, but rather upon "a recognition that supervisory
> indifference or tacit authorization of subordinates' misconduct may be a causative
> factor in the constitutional injuries they inflict on those committed to their care."
> 13 F.3d at 798 (quoting Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)).

In the present case, Plaintiffs' Complaint alleges that Fernatt, as a first resort, contacted WVDPS

Dep. Director Chambers, rather than the Charleston Police, the agency having the ordinary

jurisdiction and authority, concerning his complaint. Plaintiffs further assert that Fernatt

contacted Chambers,"because it need[ed] to be handled by an experienced crew[6]" and that

Chambers indeed dispatched the crew there. The Complaint at Par.5 identifies the statute (West

Virginia Code §15-2D-2[7]) that provides that the West Virginia Division of Protective Services is

an agency organized under the authority of, as stated therein, "...to provide safety and security at

the capitol complex and other state facilities." At Par. 12, the homes of Fernatt and Rhodes are

noted to be "several miles from the State Capitol premises." The Complaint(Par. 13) also

contends that Fernatt has used his authority and a WVDPS vehicle for in the his personal

---

[6]Quotation derived from Kanawha Circuit Court criminal trial testimony of Fernatt in
State v. Michael Rhodes.

[7]§§15-2D-2 and 15-2D-3 were amended by HB4275, during 2018 and after the events
concerning this action occurred.

purposes. Those facts considered together would enable a jury to find "supervisory indifference or tacit authorization" discussed in Shaw, *supra*.

## INFLICTION OF EMOTIONAL DISTRESS

Defendants essentially argue that the allegation of inflicting emotional distress is unsustainable based upon the extreme burden of proof it maintains must be met. This is solely a question of evidence and accordingly its objections unfounded.

"One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for bodily harm." Syllabus pt. 3, Tanner v. Rite Aid of W. Va., Inc., 461 S.E.2d 149 (1995) citing Syllabus pt. 6, Harless v. First National Bank in Fairmont, 169 W. Va. 673, 289 S.E.2d 692 (1982)." Syl. Pt. 1, Dzinglski v. Weirton Steel Corp., 191 W. Va. 278, 445 S.E.2d 219 (1994). "Although expert testimony may be a helpful and effective method of proving emotional distress and its relationship to the act complained of, it is not always necessary." Syllabus pt. 4, in part, Tanner.

The present action alleges outrageous conduct – warrantless charges, fourth amendment violations of the person and property, fictitious making of criminal charges, a threat of bodily harm, a month of jail confinement and six months of isolated home confinement, two criminal trials. A jury would certainly be entitled to find that the outrageous conduct would result in extreme emotional distress, which is cognizable by our law.

## STATUTE OF LIMITATIONS

Defendants argue, in substance, that Plaintiff Michael Rhodes' claims of false arrest and false imprisonment are barred by a one-year statute of limitations and those causes accrued at the

14

time of his arrest on August 12, 2016.  Defendants' referenced authorities and attempts to

support that contention disregard multiple decisions (including those of this District) pointedly to

the contrary. In Collins v. Keller, Civ. Action No.. 5:17-cv-01330 (S.D. W.Va., 2018) (Berger,

J.) the Court noted:

> In short, the statute of limitations in § 1983 cases "is that which the State provides
> for personal-injury torts." Wallace v. Kato, 549 U.S. 384, 387 (2007). As both this
> Court and the West Virginia Supreme Court have recognized, West Virginia's
> two-year general personal injury statute of limitations is applicable to § 1983
> actions. See W. Va. Code §55-2-12(b); Rodgers v. Corp. of Harpers Ferry, 371
> S.E.2d 358, 362 (W.Va. 1988), abrogated on other grounds by Courtney v.
> Courtney, 437 S.E.2d 436 (W.Va. 1993); Ali v. Raleigh Cty., No.
> 5:17-CV-03386, 2018 WL 1582722, at *9 (S.D.W. Va. Mar. 29, 2018); Morales
> v. Robinson, No. CIV A 205-0509, 2007 WL 1074836, at *4 (S.D.W. Va. Apr. 6,
> 2007) (Copenhaver, J.); Bell ex rel. Bell v. Bd. of Educ. of Cty. of Fayette, 290 F.
> Supp. 2d 701, 709-10 (S.D.W. Va. 2003) (Haden, J.).

Accordingly, in that the Complaint in this action was filed less than two years from the date of

his arrest, the statute of limitations observed by this Court was effectively tolled by filing of the

same.

## FAILURE TO INTERVENE

Defendants deny that authority exists that would permit this claim to proceed. However,

the defense cites Browning v. Snead, 886 F.Supp. 547, 552 (S.D.W.Va. 1995) "A police officer

may not stand by idly while a citizen's constitutional rights are violated by another officer; he has

an affirmative duty to intercede on the citizen's behalf." Defendants also factually assert

"Defendants were performing their duties as WVDPS Officers." Plaintiffs' Complaint clearly

indicates the joint presence of multiple individual officers in much of what is complained of in

this case. Some have have ranks of sergeant and corporal, and include the deputy director of the

agency who sent the others on the errant mission, and continues to endorse the actions of others

as appropriate. The individual defendants continued in their conduct once leaving the Rhodes home to the Capital Complex, the opposite direction of the magistrate court, where together they continued to hold Michael Rhodes, without any judicial or other authority. No one intervened or objected. Individual Defendants later took Michael to the magistrate court and presented a falsely drawn criminal complaint and caused him to be committed to jail. No one of them hesitated or urged others to rethink their actions or desist. Those defendants appeared at proceedings in magistrate courts and the circuit court and through false statements persuaded a magistrate that Michael presented a danger to Fernatt and should not be permitted to reside in the neighborhood. All this in spite of the officers having personally, through their own observations would have been aware that the criminal action was a contrivance. The teaching of Browning, *supra*, applies here and the cause of action for *failure to intervene* should not be disturbed.

## MALICIOUS PROSECUTION

Defendants object to this claim by Plaintiff Michael Rhodes and argue it cannot lie as inadequately alleged in the Complaint and that since the Defendants are state actors, they are immune from this claim. As discussed in detail above, the individual Defendants went to great lengths to prosecute Michael Rhodes, for matters outside of the scope of their duties and jurisdiction. They left their duties as prescribed by statute to attend to a private matter miles away instigated by Defendant Fernatt. They ignored objective evidence, contrived or misrepresented facts to the courts in the bringing and advancing of the charges. All of this was done with both the actual knowledge of the risk of harm that would and did follow. A fair reading of the Complaint captures both the facts and legal assertions in that connection. The Complaint also specifically states at Par. 29:  The Defendants, acting in concert with one another, caused the

commencement of criminal proceedings against Plaintiff Michael Rhodes, without probable cause. The Defendants, acting maliciously and with deliberate indifference to his rights caused allegations to be used in furtherance of his prosecution knowing the same to false and fictitious. The criminal prosecution of Michael was ultimately terminated in his favor by not guilty verdict in a de novo circuit court trial. Accordingly, the malicious prosecution is adequately pled, and not subject to Rule 12(b) dismissal.

PUNITIVE DAMAGES

"'Punitive damages are available in § 1983 actions "for conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent.'" Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987). Plaintiffs are entitled to punitive damages as pled in Par. 39 of their complaint upon proper showing of either the indifference *or* evil intent of the individual Defendants in their individual capacities, though concedely not from them in their official capacities, nor from the WVDPS. Defendants fail to acknowledge that distinction. A defendant clearly may be sued and found liable in his/her individual capacity under, though they be acting under color of law.

CONCLUSION

The Defendants have failed to justify their motion to dismiss this action as contemplated by Rules 12(b)(6) and 8, FRCP and their motion should be dismissed with Plaintiffs awarded such further relief this Court deems proper under law.

17

Respectfully Submitted,

<u>s/Mark McMillian</u>
Mark McMillian (WV Bar 9912)
*Counsel for the Plaintiffs*
Mark McMillian - Attorney at Law, L.C.
Boulevard Tower - Suite 900
1018 Kanawha Blvd., East
Charleston, WV 25301
Tel: 304.720.9099  Fax: 304.720.0290
email: mark@markmcmillian.com