IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Charleston

MICHAEL RHODES and
ROBERT RHODES,

      Plaintiffs,

v.                                              **Civil Action No. 2:18-cv-01179**
                                              **Honorable John Copenhaver, Jr.**

WEST VIRGINIA DIVISION OF PROTECTIVE
SERVICES et. al.

      Defendants.

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

      Defendants by counsel, Christopher C. Ross, Anthony J. Delligatti, and Pullin, Fowler,

Flanagan, Brown & Poe, PLLC, offer this memorandum in support of their Rule 56 Motion for

Summary Judgment.

## FACTUAL BACKGROUND

      Plaintiffs Michael Rhodes and Robert Rhodes are father and son and bring this civil action

against the West Virginia Division of Protective Services ("WVDPS") and WVDPS Officers

Gregory Scott Fernatt, Sgt. Robert K. Herald, Sgt. Travas Bennett, Cpl. Scott Duff, Ofc. John

Workman, and Col. Jack Chambers ("Defendant Officers") related to the arrest of Plaintiff

Michael Rhodes on August 12, 2016 and subsequent criminal prosecution.

      Michael Rhodes was living with his father, Robert Rhodes, at the time of the arrest.

Michael Rhodes has had psychological health problems since 1994 and has been diagnosed with

paranoia, schizophrenia, delusions, bi-polar disorder, anxiety, and severe depression. *See* (Ex. 1 –

Plaintiff's Psychological Expert Report). Michael Rhodes admits that he had false delusions of the

police following him for the years prior to the events at issue in this case.  (Ex 2. – Michael Rhodes Deposition at 15) Michael Rhodes was not being treated for his mental health problems at the time of his arrest. (Ex 2. At 45) Michael Rhodes further admits that the delusions he had about the police following him caused him to stop at Ofc. Fernatt's house on August 12, 2016 to confront him about why the police were following him. (Ex 2. At 50-51) Finally, Plaintiff admits that if he had been treating his mental illness on August 12, 2016 he would not have stopped at Ofc. Fernatt's house to confront him about the Police following him. (Ex 2. at p. 29-30) According to Michael Rhodes, he saw Ofc. Fermat in Ofc. Fermat's driveway as Michael drove by, and Michael backed up and pulled into Ofc. Fernatt's driveway. Although Ofc. Fernatt, and Michael Rhodes differ as to what was said and what occurred in the driveway, it is not in dispute that Ofc. Fernatt reported to the WVDPS that: 1) a man came onto his property nearly striking Ofc. Fernatt with his vehicle in the presence of his 6-year-old son and 2) the man threatened him and law enforcement generally with violence if the police did not stop stalking him. (Ex. 3 – Police Report).

Ofc. Fernatt escorted his 6-year-old child into his home and then called his supervisor at the WVDPS, Deputy Director Col. Jack Chambers, to report Michael Rhodes's criminal activity. (Ex. 4 - Chambers Deposition at 7-8) Ofc. Fernatt reported that he was assaulted when a man nearly struck him with his truck and that he was in fear for his safety and the safety of his family. Col. Chambers dispatched Officers, Sgt. Robert K. Herald, and Cpl. Scott Duff to investigate the assault, trespassing, and threats made to Ofc. Fernatt. (Ex 4 at 7-8) Ofc. Fernatt first gave an oral statement to Defendant Officers Herald and Duff about the threats made and WVDPS ran the license plate of the truck. (Ex. 5 – Duff Deposition at 11) Ofc. Fernatt's written report summarizes what he told officers Herald and Duff. (Ex. 3 – Police Report at victim statement). The victim report states that Michael Rhodes pulled into Ofc. Fernatt's driveway while Ofc. Fernatt's 6-year-

2

old son was in his car and Michael Rhodes said "he would get me [Ofc. Fernatt] if I didn't quit stalking him. . . . [and] that I was going to pay." Ofc. Fernatt further reported that he feared that Michael, whom he did not know at the time, was going to use his truck to injure him or his son.

After discovering the suspect was Michael Rhodes and that he lived in the neighborhood, Officers Herald and Duff called Officers Bennett and Workman to assist in going to Michael Rhodes's house to investigate the retaliatory threats made against law enforcement. (Ex. 3 – Police Report) After arriving at the Rhodes residence, the Defendant Officers confirmed that Michael Rhodes's truck was parked outside. Sgt. Herald repeatedly knocked on the door to no response, and the Defendant Officers made multiple phone calls to the residence and no one picked up. While waiting for Michael to come to the door, a female neighbor came out of her house and warned the Defendant Officers that Mr. Rhodes is "Crazy." (Ex. 6 – Herald Discovery Response to Interrogatory 8). The Officers all testified that they were about to leave, but then Robert Rhodes arrived. Sgt. Herald explained the situation of the assault and threats of violence made to an officer and Robert Rhodes admitted the Defendant Officers into the house to speak with Michael Rhodes. (Ex. 7 – Herald Deposition at 23-26) Robert Rhodes alleges that the Defendant Officers entered without his permission, but concedes that he never stopped the officers and never told them not to enter the home. (Ex. 8 Robert Rhodes Deposition at 20). After Robert Rhodes called for his son, Michael Rhodes came up stairs and Cpl. Duff arrested him. (Ex. 9 - Duff Deposition at 9) All of the Defendant Officers testified that, at the time of the arrest, they believed that the threatening behavior and threats made against Ofc. Fernatt constituted a felony with exigent circumstances.

Plaintiffs do not allege that the arrest was violent, and the Defendant Officers all testified that the arrest was peaceful. Michael Rhodes was taken to the Capitol for fingerprinting and other police processing where Sgt. Herald drafted a criminal complaint against Michael Rhodes for

3

assault on an officer, destruction of property, fleeing from an officer, and obstruction of justice. After Michael was processed, Officers Duff and Herald took Michael Rhodes before the magistrate and then to South Central Regional Jail where he was bonded out the same day.

On November 30, 2016 Plaintiff Michael Rhodes was found guilty on all four charges at a bench trial in magistrate court and a sentencing hearing was scheduled for December 14, 2016. Michael Rhodes failed to appear for his sentencing hearing and was arrested on a capias warrant. Michael Rhodes alleges that his arrest and subsequent incarceration was due to his public defender's failure to get the sentencing date moved. (Ex. 2 at p. 38) The Magistrate sentenced Michael Rhodes concurrently to jail for three 12 month terms and one six month term.

Michael Rhodes appealed and moved to dismiss the criminal charges for lack of probable cause. Judge King decided there was sufficient evidence to proceed to trial, wherein Michael Rhodes was acquitted of all charges.Plaintiffs subsequently filed a host of claims against the WVDPS, as well as six officers of the WVDPS including:

> Count 1 – Federal Civil rights violations under 42 U.S.C. § 1983 against all Defendants – violation of Fourth amendment for unlawful arrest for warrantless arrest without probable cause (¶24 of the *Complaint*) and violation of Fourteenth Amendment "by subjecting [Plaintiff] to jail and community confinement." (¶25 of the *Complaint*)
> Count 2 – State law claim for false arrest, and false imprisonment against all Defendants. (¶27 of the *Complaint*)
> Count 3 – State law claim for Malicious Prosecution against all Defendants. (¶29 of the *Complaint*)
> Count 4 – State law claim for Intentional Infliction of Emotional Distress. (¶31 of the *Complaint*)
> Count 5 – State law claim for Failure to Supervise Officers against Defendant Division of Protective Services. (¶33 of the *Complaint*)
> Count 6 – State law claim for Failure to Intervene against all Defendants. (¶35 of the *Complaint*)

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986);  All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986). Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. *Celotex*, 477 U.S. at 322-23. Therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## LAW AND ARGUMENT

1. **Plaintiffs' claims under 42 U.S.C. § 1983 against the West Virginia Division of Protective Services must be dismissed because the WVDPS is not an entity amenable to suit under 42 U.S.C. § 1983, and the State enjoys sovereign immunity under the Eleventh Amendment to the Constitution of the United States.**

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to

suits by citizens of other states, the United States Supreme Court has interpreted that to mean all citizens. *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868 (2009). Eleventh Amendment immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." *Johnson v. Burke*, No. 3:14-cv-26429 at *7 (S.D. W. Va. May 15, 2015). Courts have repeatedly found that state agencies such as the WVDPS are immune from § 1983 claims.[1]

Because the WVDPS is immune under the Eleventh Amendment and is not a suible entity under § 1983, Count 1 against the WVDPS must be dismissed.

2. **Plaintiffs' claims under 42 U.S.C. § 1983 against the individual WVDPS officers in their official capacities must be dismissed because they are immune under the Eleventh Amendment to the Constitution of the United States.**

Plaintiffs' 42 U.S.C. § 1983 allegations are unclear as to whether the individual officers are being sued in their official capacities or personal capacities. State officials sued in their official capacity may claim immunity under the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099 (1985). To the extent that the Plaintiffs' 42 U.S.C. § 1983 are brought against the Defendant Officers in their official Capacity, those claims must be dismissed because the officers, in their official capacities, enjoy sovereign immunity.

---

[1] *See id. citing Kinder v. Primecare Med., Inc.*, No. 3:13-31596 at *2 (S.D.W.Va. Mar. 19, 2015) (dismissing the West Virginia Regional Authority and the Western Regional Jail from § 1983 suit on Eleventh Amendment grounds); *Skaggs v. W. Reg'l Jail*, No. 3:13-3293 at *1 (S.D.W.Va. Jan. 8, 2014); *Regueno v. Erwin*, No. 2:13-cv-00815 at *2 (S.D.W.Va. May 1, 2013); *Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 728 F. Supp. 2d 803, 818 (S.D.W.Va. 2010) ("It is well established that the WVRJA is an agency of the State of West Virginia and is not a 'person' within the meaning of § 1983 for purposes of an action seeking money damages."); *Lavender v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 3:06-1032 at *3 (S.D.W.Va. Feb. 4, 2008. Although, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and act[s] pursuant to a valid grant of constitutional authority" *(Board of Trustees v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955 (2001) *(quoting Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631 (2000)) the Supreme Court has concluded that Congress did not do so when it imposed liability on "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65, 109 S.Ct. 2304 (1989).

**3. Plaintiffs' claims under 42 U.S.C. § 1983 must fail because Defendants are qualifiedly immune from the claims under the facts because all Defendant Officers were under the reasonable belief that they had legal justification for the arrest.**

Plaintiffs' claim that Michael Rhodes was "forcibly abducted without legal authority in any form." Plaintiffs allege the arrest of Michael Rhodes was done in violation of the warrant requirement of the Fourth Amendment, without probable cause, and without jurisdiction. *See Complaint* ¶ 24. Plaintiffs also assert a claim that all of the Defendants deprived Michael Rhodes of his due process rights under the Fourteenth Amendment by subjecting him to jail and community confinement. *See Complaint* ¶ 25

Plaintiffs' *Complaint* and response in opposition to the Defendants' *Motion to Dismiss* characterizes the WVDPS officers as "security officers" who lacked jurisdiction beyond the Capitol premises. Plaintiffs further allege that the WVDPS should have "call[ed] an a appropriate agency to investigate." *Complaint* ¶ 13. Plaintiffs may believe that WVDPS officers are glorified mall cops only responsible for security for the Capitol Complex, but its officers are all full-fledged law enforcement officers with the same training and authority of the West Virginia State Police. *See* W.Va. Code § 15-20-3 *et seq.* In fact, any WVDPS officer:

> may carry designated weapons and have the same powers of arrest and law enforcement in Kanawha County as members of the West Virginia State Police as set forth in § 15-2-12(b) & § 15-2-12(d) of this code.

W. Va. Code § 15-2D-3(a). W. Va. Code § 15-2-12(b)(1) grants WVDPS officers the power to:

> make arrests [anywhere in Kanawha County] of any person charged with the violation of any law of this state or of the Untied States, and when a witness to the perpetration of any offense or crime, or to the violation of any law of this state, or of the United States, to make arrests without warrant; to arrest and detain any persons suspected of the commission of any felony or misdemeanor whenever a complaint is made and a warrant is issued thereon for the arrest, and the person arrested shall be

> immediately brought before the proper tribunal for examination
> and trial in the county where the offense for which the arrest has
> been made was committed.

Also, the legislature has adopted, by virtue of the Code of State Rules, duties of the various ranks

of WVDPS Officers. *See* W. Va. C.S.R. § 99-2-3; West Virginia Division of Personnel Class

Specifications 8950 - 8952.[2] Because the Defendants in this case had the same authority as the

West Virginia State Police, the Court should view the allegations in the *Complaint* the same as it

would if a person had threatened a uniformed West Virginia State Police Trooper, and disregard

Plaintiffs' characterization that the WVDPS officers were acting outside of their jurisdiction.

A police officer is liable under 42 U.S.C. § 1983 for his acts in connection with an arrest

if (1) he acts under color of state law and (2) he deprives the arrested person of a right secured by

federal law; however, he is not liable if there was probable cause for the arrest or he acted under

an honest misunderstanding of the law or facts. The test to determine whether a police officer is

entitled to qualified immunity is two-fold: (1) do the facts alleged show the officer's conduct

violated a constitutional right?, and (2) was that right clearly established such that a reasonable

person would have known? *See Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789 (1991).

The Fourth Circuit Court of Appeals has held:

> For a right to be "clearly established," in a qualified immunity
> case, "the contours of the right must be sufficiently clear that a
> reasonable officer would understand that what he is doing violates
> that right." Therefore, in deciding whether the right was clearly
> established, we must determine whether an official in the
> defendant's position knew or reasonably should have known that
> the action he took violated the constitutional rights of the plaintiff.

*Hill v. Crum*, 727 F.3d 312, 321-22 (4th Cir. 2013) (internal citations omitted). In other words,

---

[2] WVDPS officers duties are broad and includes "Provid[ing] law enforcement and police work involving the safeguarding of the public, state employees and state property and involving other hazardous, criminal, or unauthorized activities." West Virginia Division of Personnel Class Specifications 8952.

courts ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001). Qualified immunity extends to government officials' objectively reasonable mistakes, "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009) "[T]he immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question." *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994).

This serves two purposes. First, using the officer's perception of the facts at the time limits second-guessing the reasonableness of actions with the benefit of 20/20 hindsight. Second, using this perspective limits the need for decision-makers to sort through conflicting versions of the actual facts, and allows them to focus instead on what the officer reasonably perceived. Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law," and it "protects law enforcement officers from bad guesses in gray areas and ensures that they are liable only for transgressing bright lines." *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (citation and internal quotation marks omitted). "[Q]ualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). "For a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right must be sufficiently clear that a reasonable person would understand that what he is doing violates that right." *Id.* When evaluating whether a right was clearly established, courts do not ask whether the right allegedly violated was established "as a broad general proposition" but whether "it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Raub v. Campbell*, 785 F.3d 876, 882 (4th Cir. 2015) (*quoting Saucier v. Katz*,

9

533 U.S. at 201-202).

Qualified immunity is a complete defense to a Section 1983 false arrest claim. *See Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012), as amended (Dec. 4, 2012). An arresting officer is entitled to qualified immunity even when probable cause to arrest does not exist, "if he can establish that there was arguable probable cause to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera* at 743 (internal quotation marks omitted). "Individual liability for actions in the performance of official duties arises only when an officer knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights of the … individuals affected, or if he took the action with the malicious intention to cause deprivation of constitutional rights or injury…" *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982). (quotation omitted). As the Fourth Circuit Court of Appeals has stated: "We do not expect sheriffs to be judges and to have the training to sort through every intricacy of case law that is hardly a model of clarity." *Bland v. Roberts*, 730 F.3d 368, 394 (4th Cir. 2013) (quotation omitted). "[P]olice officers are not expected to parse code language as though they were participating in a law school seminar." *Id*. Rather, in considering whether constitutional rights were clearly established for qualified immunity purposes, [the Fourth Circuit Court of Appeals] views the issue from 'the layman's perspective … recognizing that 'particularity with regard to legal conclusions, lay officers obviously cannot be expected to perform at the level achievable by those trained in the law.'" *Id*. (quotations omitted)

A law enforcement officer, "may, without a warrant, arrest any person who he believes,

upon reasonable grounds, has committed a felony." *State v. McCauley*, 43 S.E.2d 454, 456 (W.Va. 1947). Here, Officers Duff, Herald, Bennett and Workman all testified that they all thought there was probable cause to arrest Michael Rhodes for a felony due to the act of threatening harm against Ofc. Fernatt and for recklessly almost hitting Ofc. Fernatt with his truck. Although, Plaintiff contends that there was a Fourth Amendment violation because the officers only had evidence of a misdemeanor, under the circumstances whereby a person threatens a law enforcement officer with bodily harm if he (and the police generally) did not stop following him, it was reasonable to believe that a felony had been committed and that an arrest warrant was not necessary. Thus, even if probable cause for a felony did not exist the officers had a reasonable belief that probable cause for a felony existed.

While the arresting officers' primary goal was to put an end to the violent threat they believed existed, there was evidence that Michael Rhodes had committed a felony of terroristic threats (against branch or level of government) under W. Va. Code § 61-6-24 and the felony of intimidation and retaliation against a public officer (individually) under W. Va. Code § 61-5-27. The officers received a statement from a law enforcement officer (Ofc. Fernatt) that an unknown individual came on to the officer's property while the officer was in uniform, and the man stated that if the police did not quit stalking him, he would make sure that he would "get" Ofc. Fernatt and law enforcement generally before they got him. Ofc. Fernatt rightfully took this as a threat against himself and law enforcement generally and called his superiors.

Michael Rhodes had delusions that the police were stalking him and were out to get him. Michael stopped at Ofc. Fernatt's house for the purpose of influencing and intimidating law enforcement generally and made a specific threat that if the police did not stop following him, he would get the police generally, and Ofc. Fernatt specifically before the police got him. Ofc.

11

Fernatt took that as a threat against himself and law enforcement generally. Cpl. Duff arrested Michael Rhodes with the reasonable belief that Michael Rhodes had made a threat of violence against law enforcement for the purpose of influencing how that branch of government acted or in retaliation for the police following him. Moreover, Michael Rhodes and the responding officers were under the reasonable belief that Michael Rhodes had threatened and intimidated Ofc. Fernatt in retaliation for the performance of his duties as an officer. For the sake of argument, even if Ofc. Fernatt's report was not accurate, the responding officers were under a reasonable belief that the threats were actually made and that a felony had been committed.

**4. As to Plaintiffs' claim for a violation of his Fourteenth Amendment right to due process by "subjecting him to jail and community confinement," Plaintiffs have produced no evidence that any of the Defendants placed him in Jail or community confinement.**

Again, the test to determine whether a police officer is entitled to qualified immunity is two-fold: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right, and (2) was that right clearly established such that a reasonable person would have known. *See Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789 (1991). Here, none of the Defendant Officers subjected Michael Rhodes to Jail or community confinement. Moreover, Plaintiffs have not produced any evidence that any of the Defendants played any role in the prosecutorial decisions. Rather, the Kanawha County Prosecuting attorney took the case and unbeknownst to most of the Defendants pursued a conviction and a sentence of incarceration. The Defendants had no say in the prosecution or sentencing of Michael Rhodes. In fact, it was the Magistrate Court of Kanawha County that placed Michael Rhodes in jail only after failing to appear for his sentencing hearing. (Ex. 2 - Michael Rhodes Deposition at 38).

Because there is no evidence that any of the Defendants violated any clearly established

right under the 14th Amendment, Plaintiffs' § 1983 claims against all Defendants must be dismissed.

**5. Plaintiffs' claims for False Arrest and False Imprisonment must be dismissed because those claims were filed beyond the one-year statute of limitations.**

Plaintiffs' claims false arrest and false imprisonment "under West Virginia law" in Count 2. In West Virginia, the applicable period of limitations for a claim of "false arrest, false imprisonment, and malicious prosecution" is one year as set forth in West Virginia Code § 55-2-12(c).[3] Plaintiff Michael Rhodes' arrest occurred on August 12, 2016, and he did not file the instant action until July 23, 2018, any claim for false arrest/imprisonment is time-barred by the one-year statute of limitations.

**6. Defendants are qualifiedly immune from all of Plaintiffs' state law claims under the facts.**

Defendants are entitled to qualified immunity with respect to the arrest of Plaintiff Michael Rhodes as it was effectuated in the performance of their official duties as DPS Officers. In Syllabus Point 8 of *Parkulo v. West Virginia Bd. of Probation and Parole*, 483 S.E.2d 507 (W.Va. 1996) the court stated:

> A public executive official who is acting within the scope of his authority and is not covered by the provisions of W.Va. Code, §29-12A-1, et seq., is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious or otherwise oppressive.

Moreover, the court in *State v. Chase Securities, Inc.*, 424 S.E.2d 591, 596 (W.Va. 1992) noted that "the purpose of such official immunity is not to protect an erring official, but to insulate the decision making process from the harassment of prospective litigation. The provision of

---

[3] *See also Wilt* v. *State Auto. Mut. Ins. Co.*, 506 S.E.2d 608, 613 (W.Va. 1998); *Snodgrass* v. *Sisson's Mobile Home Sales. Inc.*, 244 S.E.2d 321 (W.Va. 1978); *Fleiming* v. *West Virginia*, No. 5:08-cv-00267 (S.D.W.Va., April 7, 2009).

immunity rests on the view that the threat of liability will make federal officials unduly timid in carrying out their official duties, and that effective government will be promoted if officials are freed of the costs of vexatious and often frivolous damages suits." *Id.* (Citations omitted).

In *Clark v. Dunn*, 465 S.E.2d 374 (W.Va. 1995) the court stated that "it is clear that as a public official, Dunn, is entitled to qualified immunity for his actions in performing discretionary acts" and "negligence simply is not sufficient for liability to be imposed under this standard or doctrine." *Id*, 465 S.E.2d at 380. The court further stated, as in the instant case, "Officer Dunn was engaged in the performance of discretionary judgments and actions within the course of his duties ... [and] ... Officer Dunn should not be faced with the choice of either inaction or dereliction of duty or 'being mulcted in damages' for doing his duty." *Id,* 465 S.E.2d at 380. This duty was well articulated in Syllabus Point 4 of *Clark* where the court stated:

> If a public officer is either authorized or required, in the exercise of his judgment and discretion, to make a decision and to perform acts in the making of that decision, and the decision and acts are within the scope of his duty, authority, and jurisdiction, he is not liable for negligence or other error in the making of that decision, at the suit of a private individual claiming to have been damaged thereby.

Finally, the West Virginia Supreme Court has held that when state law claims for unlawful search, seizure, or arrest are alleged, the Court will apply federal civil rights Fourth Amendment based jurisprudence even when no federal claim is alleged. *See Robinson v. Pack*, 679 S.E.2d 660 (n. 11) (W.Va. 2009).

In order to sustain a viable claim against a State agency sufficient to overcome this immunity, it must be established that the agency knowingly violated a clearly established law, or acted maliciously, fraudulently or oppressively. *See Parkulo*, 483 S.E.2d at 507. In other words, the state, its agencies, officials and employees are immune for acts or omissions arising out of

14

the exercise of discretion in carrying out their duties, as long as they do not violate any known law or act with malice or bad faith. *Id* at Syl. Pt. 8.

Indeed, "immunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all." *Hutchinson v. City of Huntington*, 479 S.E.2d 649, 658 (W.Va. 1996). The *Hutchinson* court remarked that "the very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case." *Id.* The *Hutchinson* court held that:

> An assertion of qualified or absolute immunity should be heard and resolved prior to any trial, because if the claim of immunity is proper and valid., the very thing from which the defendant is immune-a trial-will, absent a pretrial ruling, occur and cannot be remedied by a later appeal. On the other hand, the trial judge must understand that a grant of summary judgment based on immunity does not lead to a loss of right that cannot be corrected on appeal.

*Id* at n. 13.

Here, the Defendants are entitled to qualified immunity against Plaintiffs' state law claims as they are premised upon discretionary actions and there is no evidence of the violation of a clearly established legal right. For the same reasons stated above as to Plaintiffs' § 1983 claims, Plaintiffs' state law claims must be dismissed because the Defendants are immune.

**7.  Plaintiffs have failed to produce evidence of a claim for Malicious Prosecution.**

To prove a claim for malicious prosecution, "plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that is was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If the Plaintiff fails to prove any of these, he cannot recover." *Norfolk Southern Ry.*

*Co. v. Higginbotham*, 721 S.E.2d 540, 545 (W.Va. 2011). "The term malicious is defined as '[s]ubstantially certain to cause injury' and 'without just cause or excuse' . . . . This definition implies an improper or evil intent or motive or the intent to do harm." *Clark v. Druckman*, 624 S.E.2d 864, 870-71 (W.Va. 2005). "An allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). Therefore, Plaintiffs must be able to show malice and lack of probable cause to maintain a malicious prosecution cause of action.

Here, none of the Defendants, with the exception of testimony from Ofc. Fernatt at the criminal trial, had any say in the prosecution of the criminal case after the *Complaint* was filed. As set forth above, the Defendants all reasonably believed that probable cause existed at the time of arrest and at the time the criminal complaint was filed. Michael Rhodes asked that the Court find that there was no probable cause for any of his charges, but the Circuit Court of Kanawha County rejected that argument and proceeded to a de novo bench trial where it found that the state did not prove its case beyond a reasonable doubt.

Because probable cause existed to charge Michael Rhodes with assault for threatening Ofc. Fernatt, and for placing him in reasonable apprehension of bodily harm, Michael Rhodes may not maintain a claim of malicious prosecution against any of the Defendants. Moreover, because, Michael Rhodes has produced no evidence that any of the Defendants acted with malicious intent to have him prosecuted, his claim for malicious prosecution fails.

8. **Plaintiffs have failed to produce evidence of a claim for intentional infliction of emotional distress.**

Notwithstanding the application of qualified immunity to the Defendants, Plaintiffs have failed to produce evidence of Intentional Infliction of Emotional Distress. The West Virginia

Supreme Court of Appeals has outlined the following standard necessary to prevail on an intentional infliction of emotional distress claim:

> [i]n order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 2, *Philyaw v. E. Associated Coal Corp.*, 633 S.E.2d 8 (W.Va. 2006).

First, Plaintiffs have failed to demonstrate proof that that any defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency. The evidence demonstrates that WVDPS officers responded to a call and peacefully arrested Michael Rhodes, and charged him with crimes for which he was convicted.

Second, Plaintiffs have failed to demonstrate that any Defendants acted with the intent to cause emotional distress. Michael Rhodes testified that the only actions that any officers took to intentionally cause emotional distress were 1) Ofc. Fernatt making up false report, 2) Sgt. Herald stating if Robert Rhodes was not there, Michael would have taken a beating, and 3) not letting Michael use the restroom or get a drink while being processed. (Ex. 2 Michael Rhodes Depo p. 38-42). Robert Rhodes claims that the Officers at his house caused him emotional distress, but he also believes that the Officers "thought they were doing their duty." (Ex. 8 – Robert Rhodes Depo p. 38.) While Defendants contest the truthfulness of these allegations, no jury could find that any of these actions were done with the intent to cause emotional distress.

Third, Michael Rhodes has failed to produce evidence that any of those actions cause

emotional distress. Michael Rhodes was suicidal and had a fear of leaving his house because of the delusions of the police following prior to and on the day of his arrest. (Ex. 2 Michael Rhodes Depo at 15-19.) Soon after the arrest Michael Rhodes received treatment for his psychological issues, began taking medication, and received relief. (Ex. 2 Michael Rhodes Depo p. 20-22, 44-45.) Michael Rhodes' psychological issues including his delusion about the police and suicidal ideation subsided soon after he started receiving treatment and the treatment would not have occurred but for his arrest.

Because Plaintiffs have failed to establish a prima facie case for intentional infliction of emotional distress, Plaintiffs' claims must be dismissed.

9. **Plaintiffs claim for Failure to Supervise / Agency Liability fails because a supervising police officer may not be held liable for the wrongful actions of his subordinates.**

Plaintiffs allege Col. Chambers and the WVDPS are liable for the alleged wrongful actions of the Defendant Officers that responded to the threats and assault on Ofc. Fernatt. Syllabus Point 5 of *Robinson v. Pack* is clear that:

> Under the holding of *Ashcroft v. Iqbal*, U.S. , 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009),   a supervising police officer may not be held liable for the wrongful actions of his or her subordinate officers in connection with an alleged civil rights violation because a supervising police officer is only liable for his or her own conduct and not that of his/her subordinates.

679 S.E.2d at 660. Because this is a claim for failure to supervise subordinate police officers, and *Robinson v. Pack* held that no such claim exists in West Virginia, Plaintiffs' Count 5 fails as a matter of law and must be dismissed.

Moreover, Plaintiff has failed to produce any evidence of a duty that Col. Chambers violated, much less a clearly established legal right. Rather, the evidence suggests that Col.

Chambers appropriately dispatched officers to respond to a report of a crime over which the WVDPS had jurisdiction.

**10. Plaintiffs cannot establish their claims for Failure to Intervene.**

Notwithstanding the application of qualified immunity to the Defendants, Plaintiffs are unable to establish their claim for failure to intervene. The Plaintiffs allege that Defendant Officers should have intervened with respect to the arresting WVDPS officer and the subsequent prosecution. "A police officer may not stand by idly while a citizen's constitutional rights are violated by another officer; he has an affirmative duty to intercede on the citizen's behalf." *Browning v. Snead*, 886 F.Supp. 547, 552 (S.D.W.Va. 1995).

The West Virginia Supreme Court of Appeals has not had the opportunity to address this issue. However, in *Randall v. Prince George's County, Md.*, the Fourth Circuit found that:

> [A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.

302 F.3d 188, 203-204 (4th Cir. 2002).

Such claims tend to be brought in cases where a law enforcement officer may be held liable for a failure to intervene when he is in a position to intervene against the use of excessive force by a fellow officer. In *Riley v. Newton* the Eleventh Circuit clarified found that the officer who is alleged to have failed to intervene must have observed some sort of excessive force used by the other officer in order to establish a duty to intervene. 94 F.3d 632, 635 (11th Cir. 1996).

Here, Plaintiffs allege, with minimal explanation, that WVDPS Officers failed to intervene in conduct of fellow officers related to the arrest of Plaintiff Michael Rhodes. The Defendant Officers were acting under lawful authority,[4] upon the first hand observation of fellow

19

DPS Officer Fernatt, and based upon a reasonable investigation of the scene of the criminal conduct of Plaintiff Michael Rhodes. The Plaintiffs have not produced any evidence that any of the Defendants knew that a fellow officer was violating Michael Rhodes's constitutional rights. Thus, Plaintiffs' cause of action for failure to intervene fails as a matter of law and Judgment should be awarded in favor of the Defendants.

## PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, Defendants request that this Honorable Court grant Defendants' *Motion to For Summary Judgment*, award judgment in favor of the Defendants and grant Defendants any other and further relief that the Court deems to be appropriate.

THE WEST VIRGINIA DIVISION OF
PROTECTIVE SERVICES, GREGORY SCOTT
FERNATT, ROBERT K. HERALD,
SCOTT DUFF, JOHN WORKMAN,
TRAVAS BENNET, AND JACK CHAMBERS

By Counsel

_____/s/ Anthony J. Delligatti_____
Christopher C. Ross, Esq., WVSB #10415
Anthony J. Delligatti, Esq., WVSB #12345

PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC
JamesMark Building
901 Quarrier Street
Charleston, West Virginia 25301
Telephone:  (304) 344-0100
Facsimile:   (304) 342-1545

---

[4]  It is the same authority granted to the West Virginia State Police. *See* n.2.

20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Charleston

MICHAEL RHODES and
ROBERT RHODES,

      **Plaintiffs,**

v.                                               **Civil Action No. 2:18-cv-01179**
                                               **Honorable John Copenhaver, Jr.**

WEST VIRGINIA DIVISION OF PROTECTIVE
SERVICES; GREGORY SCOTT FERNATT;
ROBERT K. HERALD; SCOTT DUFF;
JOHN WORKMAN; TRAVAS BENNETT; and
JACK CHAMBERS,

      **Defendants.**

## CERTIFICATE OF SERVICE

The undersigned counsel for defendants, West Virginia Division of Protective Services and its Officers Gregory Scott Fernatt, Robert K. Herald, Scott Duff, John Workman, Travas Bennett, and Jack Chambers do hereby certify on this 23rd day of September, 2019, that a true copy of the foregoing *"Defendants' Memorandum in Support of Motion For Summary Judgment"* was served upon counsel of record via the Court's CM/ECF filing system and electronic mail per FRCP 5(b)(2)(E) as follows:

| | |
|---|---|
| ***Counsel for Plaintiffs*** | ***Counterclaimant Counsel for Defendant*** |
| Mark McMillian, Esq. (WVSB #9912) | ***Gregory Scott Fernatt*** |
| Boulevard Tower, Ste. 900 | Michael Del Guidice, Esq. (WVSB # 982) |
| 1018 Kanawha Blvd., East | Ciccarello, Del Guidice, & LaFon |
| Charleston, WV 25301 | 1219 Virginia St. East, Ste. 100 |
| Telephone:  (304) 720-9099 | Charleston, WV 25301 |
| | Telephone:  (304) 343-4440 |

21

/s/ Anthony J. Delligatti

Christopher C. Ross, Esq., WVSB #10415
Anthony J. Delligatti, Esq., WVSB #12345

**PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, West Virginia 25301
Telephone:  (304) 344-0100
Facsimile: (304) 342-1545

.

2